Filed 8/20/14  In re K.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.P., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>T.P. et al.,<br><br>    Defendants and Appellants. | E059361<br><br>(Super.Ct.No. RIJ1200260)<br><br>O P I N I O N |

APPEAL from the Superior Court of Riverside County.  Tamara L. Wagner, Judge.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant, T.P.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant, L.H.

1

Pamela J. Walls, County Counsel, and Anna M. Marchand and Marsha L. Victor, Deputy County Counsel, for Plaintiff and Respondent.

## I. INTRODUCTION

Following a physical altercation between appellants T.P. (Father) and L.H. (Mother), respondent Riverside County Department of Public Social Services (DPSS) took their child, four-month-old K.P., into protective custody.  The juvenile court took jurisdiction over K.P. pursuant to Welfare and Institutions Code section 300[1] based on the parents' domestic violence and Mother's substance abuse.  The parents were provided with reunification services, but when they failed to make substantive progress on their case plans, the court terminated services and set a hearing to be held pursuant to section 366.26.  At that time, the parents were authorized to have one-hour visits with K.P. twice each week.  In July 2013, DPSS applied ex parte to reduce the parents' visits to a single, one-hour visit per month.  Following a hearing, the court granted the application.  The parents appealed.

Father contends the ex parte application was not correctly served, was insufficient, and unsupported by admissible evidence.[2]  Mother joins in Father's arguments and

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]  In Father's opening brief, he states that he "joins in the arguments and briefs submitted on his behalf in case number E057591."  He goes on to make an additional argument regarding the issues raised in the referenced case.  To the extent Father is attempting to make a new argument pertaining to the former appeal, the appropriate procedure is to request leave to file a supplemental brief in the other appeal.  (See Cal. Rules of Court, rule 8.200(a)(4).)  The argument has no relevance to this appeal.

further contends that the court's order was an abuse of discretion.  For the reasons set forth below, we reject these arguments and affirm the order.

## II.  FACTUAL AND PROCEDURAL SUMMARY

A.  *Background*[3]

Mother gave birth to K.P. in October 2011.  At that time, Mother was taking methadone for treatment of a heroin addiction.  K.P. was born addicted to methadone and hospitalized for the first four months of her life.  After K.P. was discharged from the hospital on February 20, 2012, Mother and K.P. moved in with Father at the paternal grandmother's house.

In March 2012, Mother and Father were involved in a domestic violence incident in which each inflicted injuries on the other.  The parents were arrested and K.P. was taken into protective custody and placed with a foster family.  The parents disclosed another domestic violence incident between them that took place about one year earlier.

DPSS filed a petition concerning K.P. under section 300, subdivisions (b) and (g).  At a contested jurisdictional/dispositional hearing, the court found true allegations of domestic violence, child endangerment, and Mother's use of controlled substances.  K.P. was declared a dependent of the court and removed from the parents' physical custody.

---

[3]  Because of the narrow focus of this appeal, our statement of the factual and procedural background regarding the underlying case is brief.  More detailed factual and procedural histories regarding the case are set forth in our prior opinion denying Father's petition for extraordinary writ in case No. E058904, and in our opinion filed concurrently herewith in case No. E057591.  We take judicial notice of the records in these prior appeals.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

The court authorized visits to take place at the discretion of DPSS and to make any appropriate placement.

DPSS was ordered to provide, and the parents ordered to participate in, reunification services. Mother's and Father's case plans called for participation in domestic violence/anger management programs and counseling. In addition, Mother was required to participate in a substance abuse program and random drug testing.

One-hour visits between the parents and K.P. initially took place twice per week. The social worker reported that during the initial six-month review period, Father had "the ability to have appropriate, loving, and attentive contact with his daughter"; Mother's visits were likewise "appropriate and pleasant" and K.P. "appeared to be happy and well bonded to [Mother]." However, social workers described Father's behavior toward DPSS staff in terms such as "irate," "irrational," "verbally abusi[ve]," "volatile," "agitated," "dangerous," "abrasive, aggressive, disrespectful, and erratic." Because of Father's behavior, DPSS requested that the court terminate Father's visits and order him to undergo a psychological evaluation. The court reduced Father's visits to one-half hour, once each week. It also ordered the requested psychological evaluation.

After the six-month review hearing in November 2012, the court reinstated Father's regular visits with K.P. It also repeated its order that Father undergo a psychological evaluation.

In December 2012, the court ordered that K.P. have an extended visit with the paternal grandmother and authorized Father to reside in the paternal grandmother's

4

house.  After the social worker received reports about Father's hostile behavior toward the paternal and maternal grandmothers, DPSS applied for an order removing K.P. from the house.  At the time for the hearing on the application, Father left the courthouse and was driving away with K.P.  When he was reached by telephone from the courtroom, he refused to return to court until the court indicated he would be arrested if he did not.  The court then removed K.P. from the paternal grandmother's home and placed her in DPSS's custody.[4]

In a report prepared for the 12-month review hearing, the social worker stated that Mother and Father "appear to be spiraling out of control.  [Mother] continues to abuse drugs which have left her appearance and health in disarray. . . . [Father] will not allow [Mother] to speak with [DPSS] in private due to his own paranoia."  Mother admitted to the social worker in February 2013 that she had been using drugs during the last few months and lying to the social worker and the court.  She "no showed" for random testing on five dates in the preceding three months.

Father was referred to Catholic Charities for services.  However, Father did not permit Catholic Charities to release any information to DPSS because (according to the social worker) Father "has made it clear that his services are none of [DPSS]'s business and he will not share any information with" DPSS.  Father also informed the social

---

[4]  Father appealed from the orders made at the six-month review hearing and from the order removing K.P. from the paternal grandmother's home.  Those appeals are addressed in our nonpublished opinion in case No. E057591.

5

worker that he was not going to complete the court-ordered psychological examination because the psychologist "'is a friend of the Judge.'"

The social worker concluded that Mother has "admittedly been abusing drugs throughout this reporting period" and Father "continues to be volatile, unstable, and defiant instead of following through with the services that could possibly get his child returned to his custody."

A contested 12-month review hearing took place over several days in May and June 2012. At the conclusion of the hearing, the court terminated reunification services for the parents, and set a hearing to be held pursuant to section 366.26.[5]

B. *Ex Parte Application to Reduce Visitation (July 2013)*

On July 24, 2013, approximately seven weeks after the termination of services, DPSS submitted an ex parte application for an order to reduce the parents' visitation to one hour once per month. In the application, the social worker reported that Father had not requested to schedule a visit, and had only visited, K.P. once since March 2013. His only contact with her during this time occurred when he attended a doctor's appointment for K.P.'s immunizations. On one occasion, Father demanded to see K.P. on a weekend

---

[5] Father filed a petition for extraordinary writ pursuant to rule 8.452 of the California Rules of Court concerning these orders. In denying the petition, we stated: "It is abundantly clear that father's failure to reunify was not due to the inadequacy of services provided by the department, but by the fact that father set himself up as the final arbiter of what he reasonably should or should not be required to do. He was mistaken, and in persisting in this attitude, he sabotaged his efforts to reunify with his child." (*In re T.P.* (Sept. 13, 2013, E058904) [nonpub. opn.], p. 12.)

and, when the demand was rejected, yelled at the social worker that he had been approved for overnight and weekend visits.

According to the social worker, Mother's visits, while appropriate, were "sporadic." During the month of July, Mother missed one visit because she was busy and "totally forgot." Two other visits did not take place because Mother did not confirm the visits ahead of time. On July 15, 2013, Mother requested that a visit take place the next day, on her birthday. This could not be arranged due to a conflict with the social worker's schedule. Nevertheless, Mother and Father showed up at DPSS's office on July 16. Father was reportedly "disruptive" and "agitated." The social worker asked Father "to leave before his behavior escalated." As he left, Father yelled: "'See you in Court.'"

The social worker further supported the application by stating: "At this time, no family members have been definitive in voicing their desire to have [K.P.] placed in their home. [K.P.] has recently been matched with a family and [DPSS] would like to begin those initial visits before making a placement change. At that time, weekly visits would prove difficult due to the distance of the placement." This situation was updated at the hearing when counsel for DPSS explained that after finding an adoptive home, a maternal aunt indicated she would take placement of K.P. DPSS's relative assessment unit was scheduled to assess the maternal aunt's home.

The hearing was held on July 31, 2012. The social worker who signed the application was present in court. Mother and Father were present and represented by

7

counsel. In addition to the argument of counsel, Mother and Father were given an opportunity to address the court.

Following argument, the court granted the application, finding that reducing visits was in the best interest of K.P. and that "continued lengthened visits would be detrimental to the child." The court explained that Father had not visited K.P. "since sometime in March." Regarding Mother, the court indicated that it "went back through the records" and noted that Mother was late for some visits, failed to show up for other visits, and tested positive for amphetamines "at times" when she did show up. Each parent filed a notice of appeal from the court's ruling.

## III. DISCUSSION

A. *The Adequacy of Service and Notice of the Ex Parte Application*

Father contends the ex parte application was not correctly served. Specifically, he points out that the application contained no proof of service and that "Father never received notice."

The procedural facts regarding the ex parte application is not entirely clear. The record reveals that the ex parte application was received (but not filed) by the court on July 24, 2013. It includes a discussion of the factual basis for the application and is signed by the social worker and a supervisor under penalty of perjury. Following the signatures is a space for the court's order. In that space, on July 24, 2013, the court stated the following: "Set for hearing. DPSS to give notice to all parties[.] 7/31/13."

8

On July 26, 2013, the application and order was filed-stamped and the court clerk mailed it to counsel for the parties and to the home addresses on file for Mother and Father.

At the hearing, Mother's counsel stated that she received notice of the hearing by telephone and e-mail, and that she requested a hearing. Father's counsel indicated that he was the first to inform Father of the hearing when he called Father on the day of the hearing. Father therefore requested additional time to respond to the application. Counsel for DPSS responded by stating: "We just give notice to the mother and father's counsel, which we did." The attorney also pointed out that "both mother and father are here. They had notice. They are here . . . [and] can respond to this ex parte."

The following colloquy then took place:

"THE COURT: This was asked to be placed on calendar last week. Because of counsel's unavailability, [Father's counsel] asked that it be set today. Madam clerk is the one that noticed [Father's counsel], per his request, of today's specific date for it to be put on calendar today.

"[FATHER'S COUNSEL]: I was ready, but, your Honor, my client didn't receive notice. That's my point.

"THE COURT: Hold on. You are the one that requested this be put on calendar; you and [Mother's counsel]. We have put it on the date that you have requested as his counsel. You are indicating that you did not call your own client to give him notice that an ex parte was put on calendar?

9

"[FATHER'S COUNSEL]: I left a message last week, didn't receive a call back, sent him an e-mail as well, and I called him yesterday. But the directions from the Court was for DPSS to provide notice additionally, your Honor. [¶] . . . [¶]

"THE COURT: I do show notice went out as well on 7/26 by the court clerk. So in addition to phone calls, texts, and communication to counsel, notice was sent out by the court clerk . . . setting this on calendar. I show it went out to both parents at their last address on the 140 that's on file, as well as to . . . all counsel involved. . . ."

As Father points out, the ex parte application is technically flawed. It does not, for example, include a declaration of notice as required by rule 3.1204(b) of the California Rules of Court. Among other information, the required declaration must generally include the date and time that each party was given notice of the application, the manner of notice, the response of the other party, and whether opposition is expected. (Cal. Rules of Court, rule 3.1204(b)(1).)

However, the parents have not established that the procedural flaws with the application prejudiced them in any way. It appears from the record that the order setting the matter for hearing on July 31, 2013, was made on July 24, 2013, *at the request of counsel for Mother and Father.* Thus, even if DPSS did not provide notice of the hearing, it is clear that the parents' attorneys were informed by the court or court clerk of the ex parte hearing a full week before it took place. Thus, to the extent Father's counsel is complaining that his client did not receive personal notice of the proceeding, the problem appears to reflect a lack of communication between the attorney and his client;

10

Father, it seems, simply did not respond to his attorney's efforts to contact him before the hearing. Because the parents' attorneys were informed of the ex parte application well in advance of the hearing and there is no showing of prejudice, we reject the parents' arguments concerning inadequate service or notice of the hearing.

B. *Sufficiency of the Application*

The parents contend that the ex parte application was substantively flawed for three reasons. First, the running footer of the ex parte application originally stated the date of the application as "12/31/2099." This typographical or clerical error was noted by the court and corrected by DPSS's counsel prior to the filing of the document. The argument is specious.

Second, the statements in the application regarding K.P. being matched with a family was "incorrect" because DPSS's counsel's stated at the hearing that a maternal aunt had indicated that she would take placement of the child. The possible change regarding placement does not mean that the first statement was incorrect or made without personal knowledge, but only that the situation had changed in the week between the written application and the hearing. We therefore reject this argument.

Third, the parents assert that the application failed to state any irreparable harm, immediate danger, or other statutory basis for granting relief ex parte, as required by California Rules of Court, rule 3.1202(c). This alleged defect was not raised below and the argument is therefore forfeited on appeal. If not forfeited, it is rejected. The court could have found this requirement satisfied by the statement that K.P. has been matched

11

with a new family and "weekly visits [with the parents] would prove difficult due to the distance of the placement." The court could reasonably conclude that the delay or disruption of K.P.'s prospective placement that could result from continuing to require weekly parental visits justified the need for the ex parte hearing. The possibility raised at the hearing that K.P. might be placed with a maternal aunt does not affect the sufficiency of the application. We therefore reject this argument.

C. *Evidentiary Basis for Court's Order*

The parents next contend the court's order was not based on any evidence because the "ex parte application was never moved into evidence" and counsel's arguments are not evidence. "Because no evidence was introduced at the ex parte hearing," Father argues, "it was impossible for DPSS to carry its burden of producing substantial evidence of irreparable harm to [K.P.] if visitation wasn't reduced." We reject the argument. The ex parte application is signed by the social worker under penalty of perjury and filed with the court. Although statements in the application are hearsay, there was no objection to them on that, or any other evidentiary, ground. Evidentiary challenges to the application, therefore, have been forfeited. (See *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411.)

Moreover, evidentiary rules are "relaxed" in juvenile dependency proceedings and the hearsay statements contained in the reports of a social worker available for cross-examination are generally "admissible to assist the court in its determinations." (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 914; see also *In re Jeanette V.* (1998) 68

12

Cal.App.4th 811, 817 [social worker reports are admissible in postjurisdictional hearings even when social worker is not available for cross-examination]; *Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1387, fn. 3 [same].)  The social worker was in court at the hearing and available for cross-examination.  Therefore, any objection to the admissibility of the application for the truth of the factual statements therein would have been properly overruled.

D.  *The Court's Exercise of Discretion*

Mother argues that the juvenile court's order constituted an abuse of discretion. We disagree.

"When the state removes children from their parents, it is obliged to make reasonable efforts to reunify the family.  [Citations.]  [¶]  An obvious prerequisite to family reunification is regular visits between the noncustodial parent or parents and the dependent children 'as frequent[ly] as possible, consistent with the well-being of the minor.'  [Citations.]" (*In re Julie M.* (1999) 69 Cal.App.4th 41, 49, quoting § 362.1, subd. (a)(1).)  The juvenile court has discretion in fashioning an appropriate visitation order based on the best interests of the child.  (See *In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 569 [Fourth Dist., Div. Two] [the standard which governs all determinations in dependency proceedings is protection of the child's welfare and best interests].)

When, as in this case, the parent is no longer receiving reunification services, "the parents' interest in the care, custody and companionship of the child are no longer

13

paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citations] . . . ." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317, quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 309; see *In re D.B.* (2013) 217 Cal.App.4th 1080, 1090 [visitation during the postreunification period is governed by statutes that focus on permanency and stability for the child].) Thus, although the parents continue to "have an interest in these proceedings until and unless their parental rights are terminated" (*In re D.B., supra,* at p. 1091), when the parent is not participating in reunification efforts, visitation is no longer "integral to the overall plan" (*In re J.N.* (2006) 138 Cal.App.4th 450, 458-459).

Here, the court expressly based its ruling on the findings that the reduction in visitation was in K.P.'s best interest and that continued, lengthy visits would be detrimental to her. We review the court's decision under the abuse of discretion standard. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.)

Mother argues that the court abused its discretion because K.P. "never suffered any detriment" from her visits. Initially, we observe that although the court made a finding of detriment, it does not appear that it was required to do so; the finding that reduced visitation was in K.P.'s best interest was enough. Under section 366.21, subdivision (h), when the court sets a section 366.26 hearing and terminates reunification services, it "'shall continue to permit the parent . . . to visit the child pending the hearing unless it finds that visitation would be detrimental to the child.'" (See *In re Manolito L.*

14

(2001) 90 Cal.App.4th 753, 758-759, italics omitted.) Thus, a showing of detriment to the child is necessary to justify the termination of visitation; the statute does not require a showing of such detriment when the court continues to permit visitation. Here, because the court continued to permit the parents to visit K.P. (albeit on a reduced basis), it complied with the statute; there was thus no need to make a detriment finding.

The one case Mother relies on for her argument that a finding of detriment was required, *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, is distinguishable because it involved the suspension, not a reduction, of visits (*id.* at pp. 1137-1138). She offers no authority for the assertion that a finding of detriment is required when visits are permitted, but merely limited or reduced. In the absence of any contrary authority, the appropriate standard is the best interest of the child standard applicable to juvenile dependency determinations in general. (See *In re Elizabeth M., supra,* 232 Cal.App.3d at p. 569.) The child's best interest is to be determined in light of the totality of the circumstances. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206.)

Here, the court made its best interest finding based on Mother's recent poor history of visiting K.P., as well as her positive drug tests. In addition to the problems regarding Mother's visits in July 2013 that are set forth in the ex parte application, the court indicated that it "went back through the records." That is, it considered the totality of the circumstances. (See *In re Chantal S., supra,* 13 Cal.4th at p. 206.) The records include reports from March, April, and May 2013, that Mother was frequently late for visits, failed to confirm visits as required (causing them to be cancelled), and failed to

15

appear for other visits.[6]  Mother also failed to take drug tests when requested and, on at least two occasions, tested positive for amphetamines or opiates.  On another occasion, Mother arrived 40 minutes late for the visit and appeared to be under the influence of drugs.  When the social worker arrived to give Mother an oral drug test, he found that Mother had left.  Later that day, Mother was hospitalized for a drug overdose and, as a result, missed a visit scheduled to take place two days later.

In light of the focus on the child's permanency and stability following the termination of services and the evidence of Mother's ongoing drug use and sporadic visits, the court could reasonably conclude that K.P.'s best interests would be served by reducing Mother's visits to once each month.  The ruling was not, therefore, an abuse of discretion.

## IV.  DISPOSITION

The July 31, 2013 order reducing visitation is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

HOLLENHORST
            Acting P. J.

MILLER
            J.

---

[6]  Our record does not include reports of what happened with respect to visits in June 2013.

16